ALBANY,
Oct. 1827.

Ainslie
v.
Wilson.

**AINSLIE** *against* **WILSON.**

A mortgage of land to secure a simple contract debt, though it contain a stipulation against personal liability on the mortgage, does not operate as payment of the debt; nor discharge the mortgagor from personal liability for it.

An indorser of a promissory note fixed before, but paying money after the insolvent discharge of the maker, may recover against the maker, and is [*663] not affected by his discharge, whether under the act of 1813, or the subsequent act discharging the body merely.

A first indorser may maintain an action on payment to a second indorser, made after the latter has indorsed and taken up the note *in fraudem legis*, with a view to defeat the operation of the maker's discharge.

ASSUMPSIT; tried at the New York circuit, March 22d, 1825, before BETTS, (late) C. Judge, who signed a bill of exceptions, on which a motion was now made in behalf of the defendant for a new trial. The bill presented the following state of facts:

The declaration set forth, in the first count, the promissory notes hereinafter mentioned, as indorsed to John and James B. Murray; and averred that they charged the plaintiff as indorser; and that the plaintiff as indorser paid $1200 to them, they being the holders and indorsees, by conveying to them certain lots of ground, which they had agreed to accept at $1200. In the 2d count, it set forth the notes as indorsed by the plaintiff to the Murrays, and by them to Isaac Bronson, who charged the indorsers; and that the Murrays took up the notes, and then received the $1200 as stated in the first count. In the 3d count, it stated that the plaintiff indorsed two other notes payable at short periods, at the request of the defendant, *who carried them into the market; that the plaintiff was charged as indorser; and on the notes being demanded by the Murrays, the holders, the plaintiff conveyed, and they accepted, as payment of $1200, certain real estate. The 4th count stated that the plaintiff, being liable to pay as indorser, to the Murrays, notes made by the defendant to a great amount, which notes were indorsed for the accommodation of the defendant, conveyed the real estate, worth $1200. The 5th count was for a conveyance of the real estate in payment of money which the plaintiff was liable to pay as the defendant's surety, and at his request. The 6th count was for money had and received, and money paid, laid out, and expended.

Payment of a money debt as surety or indorser, by conveying land which is received at the time as payment, will support the count for money paid, laid out, and expended.

Property paid or received as money, will support the action for money paid or had and received, the same as if money itself had been paid or received.

The proof at the trial was, that the defendant, on the 12th of April, 1817, executed to the firm of Robert Ainslie & Co., of which the plaintiff was one, two promissory notes, each for the sum of $2,059 35, payable to the order of the payees, one at 6 and another at 4 months; that the payees indorsed to John B. Murray & Son, and they to Isaac Bronson; that payment was regularly demanded of the notes at maturity, and notice given to the indorsers. That on the 13th of August, 1811, the Murrays, then being holders of the notes, delivered them to a son of Isaac Bronson; and, at the time, stated that the delivery was in part payment of a loan made to the Murrays by Bronson. That about the 13th of May, 1818, the Murrays, by Robert Sedgwick, their attorney, paid to Prime, Ward and Sands, for Bronson, the amount of the notes, and received a receipt which had been previously signed by Bronson, and left for the purpose of being delivered when the payment should be made.

That on the 2d of May, 1818, the defendant was discharged from all his debts, under the insolvent law of 1813; and afterwards, on the 12th of February, 1820, he was again discharged under the act to abolish imprisonment for debt in certain cases.

The defendant introduced a bill in chancery, filed by the plaintiff on the 3d of March, 1818, against the Murrays and Bronson, which was sworn to; and it alleged, *among other things, that, on the 24th of January, 1818, an agreement was made between the plaintiff and the Murrays, that he should convey to them certain lots, and receive a discharge as indorser of the notes. That, on the same day, he executed a writing covenanting to convey the lots, provided the Murrays would, within two days from that time, pay the plaintiff $300; and discharge Ainslie & Co., from the indorsements. The bill averred that the writing so executed, was delivered to, and accepted by the Murrays; and that on the 27th of January, 1818, the plaintiff executed a deed of the lots; and on the 28th tendered it to them; that they refused to receive it, or pay the $300, or give a discharge.

[*664]

On the 24th of March, 1818, the plaintiff executed a mortgage to the Murrays, on four lots in the city of New York, as a security for their indorsements; with a proviso, that if the plaintiff should indemnify and save the Murrays harmless against their indorsements, then the mortgage to be void; and further, that if the Murrays should pay the notes, then they might enter on the premises and sell. The mortgage also declared that the mortgagees should bring no action against the plaintiff on any implied covenant contained in it; but should resort to the mortgaged premises only for indemnity.

On the 3d of February, 1821, the plaintiff released the equity of redemption in the mortgaged premises to the Murrays; who received the release as payment of $1200 on the indorsement of the plaintiff; and released him from all further liability as indorser.

After this, Charles H. Hall bought the notes of the Murrays; and released the defendant from all liability upon them.

The lots conveyed to the Murrays were subject to another and previous mortgage of $1770. The parties went into evidence on the value of the lots; and the jury found for the plaintiffs $804 45.

The judge overruled a motion to non-suit the plaintiff, made on the ground that the mortgage was a payment, and being before the insolvent discharge of 1818, this was a *bar; and that the proof varied from the special counts, (if the mortgage was not a full discharge,) in not showing that the plaintiff was personally liable to pay when he conveyed the equity of redemption; the stipulation in the mortgage having, at any rate, taken away personal liability. That the special counts not being sustained, neither were the money counts; for there was no payment of money by the plaintiff.

*C. Graham*, for the defendant. The release of the equity of redemption was not a payment of money, so as to sustain an action for money paid; (8 John. 202; 5 id. 68; 9 id. 310; 4 id. 296; 8 id. 54, 249; 3 East, 169; 1 Chit. Pl.

340 ;) and not one of the other counts in the declaration was supported by the evidence.

The first insolvent discharge was a bar: the mortgage being a payment, which preceded the date of the discharge.

But the negotiation of the notes by the Murrays to Bronson, and their payment as pretended indorsers, were *in fraudem legis*. Bronson, then, had no legal claim against them. It follows that the Murrays had no claim against the plaintiff, whose payment was, therefore, voluntary and in his own wrong. (3 Cains, 213. 2 John. 386. 4 id. 410. 9 id. 295. 8 T. R. 610.)

Again; the mortgage became absolute at law in the Murrays. The plaintiff's rights were thus complete and he acquired no new ones by the release.

Both of the insolvent discharges are therefore available

*G. Griffin*, same side, who was to reply, added these authorities: to show that money itself must be paid, in order to sustain an action for money expended; 1 Chit. Pl. 341; 5 Burr. 2589 : that there was no personal liability after the mortgage executed; 10 John, 57; 17 id. 38: that even *time*, when material, must be proved as laid; 4 John. 450.

*R. Sedgwick & D. B. Ogden*, contra. The first three counts mention no liability, personal or otherwise. But if personal liability be considered as stated, it was proved. *A man is liable when his property is so.* But the mortgage was no payment; nor was it a release of personal liability upon the notes. The stipulation as to liability relates to the effect of the mortgage. The alleged fraud between the Murrays and Bronson, if there was any, could not affect the rights of the plaintiff. He was liable as indorser to the Murrays, if not to Bronson. But no fraud was proved. An indorser may always pay voluntarily. He need not wait a suit.

If there was a variance between the special counts and the proof, then we say the money counts were sustained. The land was taken as money ; and is to be considered as money in law. (11 John. 518.)(a)

(a) And vid. *Beardsley* v. *Root*, 11 John. 464.

[*666]

ALBANY,
Oct. 1827.
―――――――
Ainslie
v.
Wilson.

The mortgage was no payment. It was taken as a mere collateral security.

*G. Griffin*, In reply. At *nisi prius*, the special counts were virtually abandoned, as they must be here; and then the question is, whether a payment in land will sustain a count for money paid. We contend not. Here, however, is no payment even in land. The conveyance is averred to have been in payment; but this could not have been so. All liability to pay was gone long before the conveyance. The mortgage took away all personal liability; the law day had passed, and the estate became absolute before the conveyance. The payment was voluntary; and, indeed, to discharge a claim created *in fraudem legis*. In no point of view, can the plaintiff recover.

*Curia, per* WOODWORTH, J. There is no sufficient evidence to impeach the transaction between the Murrays and Bronson, as being *in fraudem legis*, or done with intent to defeat the operation of the defendant's discharge. But if it be conceded that the transfer to Bronson was collusive, and that the Murrays continued to be the real holders till after the defendant's discharge, it will not defeat the plaintiff's right of action, provided that, subsequent to the discharge, he, as first indorser, was liable to the Murrays; and actually made the payment in question.

[*667]     *The evidence sought to be derived from the bill in equity, I consider as irrelevant; for whatever may have been the equity between the plaintiff and the Murrays, it is a sufficient answer here, that no right of action could accrue to the plaintiff by reason of a contract which was not carried into effect. The Murrays refused to recognize the alleged agreement. It remained, therefore, unexecuted; and for this cause the plaintiff applied to a court of equity for relief.

The mortgage was a security merely, not a payment; and, therefore, did not place the plaintiff in a situation to demand anything of Wilson, the defendant. He had not, then, become a creditor of the defendant by taking up the

notes, or paying any part, at the time of the discharge under the insolvent act of 1813; and could not be barred by it. Neither was the covenant in the mortgage an exoneration from liability as indorser of the notes. It left that liability as it found it; and merely provided against personal responsibility by reason of the mortgage, evidently meaning that the Murrays should avail themselves of nothing more than the lots.

According to this view, the plaintiff, having no cause of action against the defendant, at either of the times when he was discharged under the insolvent acts, is not affected by them.

The plaintiff's right of action then, if any, arose upon his execution of his deed to the Murrays, on the 3d of February, 1821. The consideration of that deed was expressed at 1200 dollars; and it was received in payment of so much of the notes; that sum being the value of the lots as estimated by the Murrays. On the same day, they executed to the plaintiff a writing, by which, for the consideration of this 1200 dollars, they released him from all further liability as indorser. The remainder due on the notes constituted a valid claim in favor of the Murrays, against Wilson, the maker. No money was paid, as the consideration of the equity of redemption.

Hall's purchase and release of the notes to the maker, is wholly unimportant in respect to these parties. The Murrays, *having received 1200 dollars of the indorser, discharged his liability only; and consequently, by a transfer of the notes to Hall, he acquired the right of calling on the maker for the balance remaining due. The plaintiff's right rests on the claim of having paid the 1200 dollars previously.                    [*668]

There is some question whether the equity of redemption taken subject to the previous mortgage, was equal in value to the 1200 dollars. The jury found $804 45 only; and, from the evidence, I think they were warranted in finding that amount.

The view which I have so far taken of the case, obviates the objections for variance between the special counts and

the evidence. But if I am mistaken, then the point remains to be considered, whether the conveyance of land by a surety, to satisfy the money debt of the principal, will support the money counts. It was not a voluntary payment; for the plaintiff was liable at the time to be prosecuted by the Murrays on the notes. He was originally liable; and continued so notwithstanding the mortgage, which was given as a contingent security to indemnify the Murrays, in case they should be compelled to pay. At this time, the Murrays were not the holders of the notes; but Bronson. Whenever the indorser pays after he has been fixed, the liability of the maker commences. I have no doubt that, as the conveyance of the land was received in discharge of a money debt due from the plaintiff, it is, in judgment of law, to be considered the same thing as if the plaintiff had actually paid money. The Murrays received it as money, or an equivalent for money. They had the right of electing. To the defendant it was immaterial whether the payment was made in one way or the other. If an agent receives property for his principal, and there is no presumption that it has been converted into money, the action for money had and received will not lie: but if the agent appointed to collect a money debt, should accept from the debter in extinguishment, property as money, he would not be permitted to question this form of action. I am not aware that this express point has been *decided. The authorities cited by the defendant's counsel do not, I apprehend, apply to the facts before us. In the case of *Taylor* v. *Higgins*, (3 East, 170,) the plaintiff was surety for the defendant in a bond before his discharge under an insolvent debtor's act; and was afterwards obliged to give a new security by bond and warrant of attorney. It was held that the new security could not be considered as so much money paid to the defendant's use. In the case of *Cumming* v. *Hackley & Fisher*, (8 John. 202,) the same doctrine is recognized. The question was, whether giving a bond in discharge of the liability of the plaintiffs as indorsers of two negotiable promissory notes drawn by the defendants, was to be considered as payment of money · and it was held to

[*669]

be no payment; that the obligation to pay was not the same thing as payment. By the same case, it seems to be admitted that the giving of negotiable paper would be considered equivalent to the payment of money; for otherwise a party might be obliged to pay a debt twice, if the paper should pass into the hands of an innocent indorsee. These cases go very satisfactorily to show, that the giving of the mortgage by the plaintiff, did not give him a right of action; but leave the question, whether actual payment by the convey-ance of land, is sufficient to maintain the money count, undecided. And although it is said, it must appear that money was actually advanced, the expression is to be un-derstood that nothing short of actual payment will support the count. The mere extinguishment of the original lia-bility by way of new security will not avail. In the case of *Randall* v. *Rich*, (11 Mass. Rep. 494,) this question has been considered. A negotiable promissory note was indorsed to a lessor, as collateral security for the rent of the premises. The lessor commenced an action on the note; and caused an execution to be levied on the debtor's land. In an action by the lessee for money had and received, he was held entitled to recover the balance of the note after deducting the rent in arrear. The court observed, that " the satisfaction of the execution ought to *be considered as a payment of the debt in money; and although land is taken, it is taken at money's worth; and the debt, which might have been exacted in money at all events, has been discharged."[1]

My opinion is that the motion for a new trial be denied.

Motion denied.

SUTHERLAND, J., not having heard the argument, gave no opinion.

[1] See N. Y. Dig., vol. 3, tit. *Payment* · Waterman's Am. Ch. Dig., tit. *Payment.*