Rubins *v.* Hamnett et al.   Stewart's Appeal.

Argued September 28, 1928.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*James S. Crawford,* of *Patterson, Crawford, Arensberg & Dunn,* for appellant.—Specific performance is a

matter of grace and not of right and less is required to refuse specific performance of a contract than to reform or rescind it: Lynch's App., 97 Pa. 349; Graham v. Pancoast, 30 Pa. 89; Delamater's Est., 1 Wharton 362.

*A. Leonard Balter,* with him *Ben Paul Brasley,* for appellee.—The court below properly made the decree for specific performance: Pfeil's Est., 287 Pa. 21; Wirebach v. Bank, 97 Pa. 543; Elcessor v. Elcessor, 146 Pa. 357.

OPINION BY MR. JUSTICE FRAZER, November 26, 1928:

An agreement was entered into August 23, 1927, between Rose Rubins, plaintiff, and William E. Hamnett and Anne C. Hamnett, his wife, for the purchase by plaintiff of a lot of ground situated in the 14th Ward of the City of Pittsburgh, known as Lot No. 22 in the Graymore Court Plan, for the price of $20,000 of which amount $500 was to be paid at the execution of the agreement, an additional cash payment of $4,500 to be made at the delivery of the deed on or before October 23, 1927, and the balance of $15,000 in eighteen months, secured by purchase money bond and mortgage. On October 20, 1927, a date subsequent to the execution of the agreement, the court of Common Pleas of Allegheny County adjudged William E. Hamnett, by reason of his then mental impairment, to be unable to take care of his property, and appointed William G. Stewart guardian of his estate.

At the time of signing the agreement of sale, the $500 hand money was paid over to and accepted by Hamnett and his wife, and previous to October 23, 1927, a certified check for $4,500 was tendered by plaintiff, accompanied by a declaration of her readiness to furnish the bond and mortgage, as stipulated in the agreement. Defendants refused to execute and deliver a deed, declined the certified check tendered and offered to return the $500 hand money which plaintiff would not accept.

Thereupon plaintiff filed this bill praying specific performance, requiring William G. Stewart, guardian of William E. Hamnett, to make conveyance of the real estate as stipulated in the agreement of sale. Defendant's answer did not deny the material averments in plaintiff's bill but alleged as a defense that the agreement was improvidently made at a time. Hamnett was mentally incompetent to take care of his property and that he agreed to the sale under the delusion that a sacrifice of the premises at an insufficient price was necessary.

The court below found Hamnett to be mentally competent to make the sale, that the price was fair and reasonable, and entered a decree directing conveyance and delivery of the deed to plaintiff. Exceptions to the decree were heard by the court below in banc and dismissed, and a final decree entered directing the guardian and Mrs. Hamnett to deliver the deed to plaintiff upon her compliance with the agreement. From this judgment defendants appealed.

The assignments of error are in substance directed against the conclusions of the court below refusing to sustain defendants' contentions, namely, first, that at the time of the execution of the agreement of sale, Hamnett was mentally incapacitated; and, second, that the property was sold at an inadequate price.

Hamnett was not a well man physically; he had received treatment in several sanitariums, and there were times when his mental and nervous disorders were serious and acute. He had about five years before the transaction here involved been adjudged by the court to be mentally affected and impaired to such extent as to be unable to care for his property and a guardian, William G. Stewart, a defendant in the present litigation, appointed. Two years later, in 1924, on petition and hearing the court entered an order restoring Hamnett to his property and discharging the guardian, thus revoking the then existing decree of mental incapacity.

The proven facts in the present case show that for months previous to and up to the signing of the agreement here in question, Hamnett had initiated and completed a number of real estate deals, executing deeds for properties he sold and making conveyances over which, so far as the record shows no dispute ever arose. The preponderance of the evidence proves that whatever may have been his nervous and mental condition at times before the transaction here in question, he was, during the progress of this sale, in full command of his mental faculties. He initiated it with careful attention to all details and carried it through in a business-like manner. Desiring to dispose of the real estate here involved, he frequented the real estate office of plaintiff's brother, urging him to secure a buyer, and it is clearly shown he visited that office of his own volition, and not by the inducements or persuasions of others. At the time plaintiff finally decided to purchase the property and offered to pay $20,000 for it, Hamnett insistently demanded $25,000, but subsequently agreed to the lesser price. The agreement as first drawn up was taken to Hamnett's home, where he dictated changes, which were incorporated into it. He examined and agreed to the terms as being satisfactory, and it was thereupon signed by him and his wife. Shortly after signing, he appeared at the real estate office of plaintiff's brother and in a rational manner stated he had forgotten to insert in the agreement a clause to the effect that "time is the essence of the agreement"; and later again appeared there and said: "I forgot to insert that all the owners in that plan share in keeping up the roads of the plan." It appears that some dissatisfaction to the sale was voiced by Mrs. Hamnett, but an examination of her testimony leads to the conclusion that the substance of her objection was the refusal of the buyer to pay more than $20,000 for the property.

During all of the conferences between plaintiff and her brother, who prepared the agreement, and Hamnett, the

latter, as their undisputed evidence shows, neither spoke nor acted as though he was not of sound mind or did not fully understand all details of the transaction. That he gave rational consideration and attention to safeguarding his own interests is further shown, as testified by Mrs. Hamnett, that at the time the agreement was signed, Hamnett particularly informed plaintiff, the purchaser, that certain lumber and furniture "and some different things," were not included in the sale, that he reserved them to himself, as "they were not a part of the house." While the physicians called by defendants testified that Hamnett suffered from serious mental disorders at time, with recurrent attacks, it was also testified, as the chancellor notes, by two of the doctors that Hamnett could have lucid intervals; and careful examination of the record convinces us, as the court below found, that during the entire period covered by the negotiations leading up to the agreement of sale and at the time of the execution of the instrument, Hamnett had entire command of his mental faculties, understood all that he said and did and evinced a sharp business sense in protecting his interests. Dealings of sale and purchase by a person apparently sane, though subsequently found to be insane, will not be set aside against those who have dealt with him on the faith of his being a person of competent mental understanding: Wirebach v. First National Bank, 97 Pa. 543, 549. The mental capacity of Hamnett is to be judged by its condition at the time of the execution of the agreement of sale; but evidence as to his business transactions pervious to and shortly thereafter were admissible as corroborative of his condition at the date of the agreement: Thompson v. Kyner, 65 Pa. 368, 380. The court below in the present case finds that at the time of executing the agreement Hamnett was competent to enter into it and that all the surroundings, circumstances, his conversations, his actions, lead to this conclusion.

There was conflict in the testimony as to the adequacy of the price agreed upon for the property, but we agree with the court below that $20,000 represents the fair market value of the premises in the condition in which they were at the time of the sale. The chancellor also finds that neither fraud nor imposition was practiced, that Hamnett was in no way imposed upon, and that it does not appear that plaintiff had knowledge of any impaired mental condition of Hamnett. In the present case the plaintiff purchased the property in good faith and is entitled to specific performance of the contract under the findings of the chancellor, all of which are supported by ample competent evidence.

The decree of the court below is affirmed at defendants' costs.