## Vipond v. Vipond.

John M. Snyder and Robert W. Smith, for plaintiff.

John Woodcock, W. I. Woodcock and J. Calvin Lang, Jr., for defendant.

EVANS, P. J., 47th judicial district, specially presiding, July 12, 1930.— At the time of the trial of this case we expressed ourselves as being of the

opinion that there was not sufficient evidence of mental unsoundness to warrant the submitting of the case to the jury. A careful examination of the testimony since it has been transcribed would show, however, that this was not a correct conclusion, although the impression was very strong that the testimony would warrant the conclusion that William M. Vipond was capable of attending to business at the time of the transaction which was in question. However, there was another ground also which we felt at the time had more weight in supporting the application for a compulsory nonsuit, and, after a careful consideration of the testimony and the arguments of counsel, we still feel that it is controlling in this case. This reason was that no notice whatever was given to Edgar R. Vipond, to whom a conveyance of the property was made; nor was there any testimony of any facts which would indicate or warrant the conclusion that Edgar R. Vipond knew of any mental disability on the part of William Vipond. This matter is covered in the cases of Wirebach's Exec'r v. First National Bank of Easton, 97 Pa. 543; Rubins v. Hamnett, 294 Pa. 295, and Lancaster County National Bank v. Moore, 78 Pa. 407.

It appeared in this case that William M. Vipond and his wife were having marital difficulties and had agreed to separate. They owned some real estate by entireties and William M. Vipond had some indebtedness. They agreed that the real estate should be disposed of and a sum of money paid to the wife and that they would then separate. For the purpose of carrying out this separation plan and furnishing the funds, it was arranged that there should be a conveyance of this real estate to Edgar R. Vipond, a cousin of William M. Vipond, the arrangement being made by the father of William M. Vipond. The conveyance was made to Edgar R. Vipond, who secured a loan upon the property and furnished the funds so that payment of the cash could be made to the wife and the debts of William M. Vipond paid. The wife was to receive the sum of $3000. However, when the money was paid, she accepted $2500 and permitted her husband to have $500. There had been $1000 additional, or $4000 in all raised by the mortgage, but $1000 of this was used to pay an obligation of William M. Vipond to his father.

The agreement entered into with Edgar R. Vipond provided that the property was to be held three years, subject to the right of William M. Vipond to reacquire the same. During that three-year period, however, the property was sold and the testimony shows that the mortgage was paid and the major part of the balance of the purchase money paid to William M. Vipond by check, which was endorsed by him and deposited in the bank. A small portion remaining of the purchase money was not accounted for.

The result of the whole situation is that the property was sold and the proceeds turned over to William M. Vipond and his wife, who have consumed the same, and now come into court and seek to have the cousin, who was undertaking to accommodate them, and who, so far as the record shows, received no benefit whatever, compelled to pay to them the value of the property which they had already received and consumed. There had been no proceedings to have William M. Vipond declared a feeble-minded person or a lunatic. There was nothing whatever to show that Edgar R. Vipond had any notice whatever of the various things testified to by relatives as to the basis for the opinions they expressed, and the strongest witness as to mental incapacity was the wife, who participated in a legal action, to wit, the sale of the real estate as a result of which she received $2500, now contending that her husband was incapable of doing business at the time. The whole situation impresses us as being tainted with fraud upon the part of William M. Vipond and his wife. We do not mean to indicate that there was no evidence of any mental incapacity at any time upon the part of William M. Vipond.

On the contrary, the doctors testified that his mind was affected at certain times, but that at other times he was capable of attending to business. It is a fact that he was permitted to go about and do business; that he worked and earned money; that he conducted his own business, and that he became the subject of melancholia, which was apparently the result of marital worries and troubles. But no doctor testified that at the time of this transaction William M. Vipond was incapable of doing business. On the contrary, the fact appears that he was actually doing business as an ordinary man would, without anything to warn those with whom he was doing business that he was incapable of such action. We are of the opinion, therefore, that the motion to strike off the compulsory nonsuit should be overruled.

*Decree.*

And now, July 12, 1930, motion of plaintiff to strike off the compulsory nonsuit is overruled.