## Emig's Estate. No. 1

*Luria & Still*, for petitioners.

*Kain, Kain & Kain*, contra.

GROSS, P. J., August 22, 1939.—On February 6, 1939, Warren L. Leeking, executor of the estate of the above-named William E. Emig, late of the Township of Jackson, York County, Pa., deceased, presented his petition under section 18 of the Fiduciaries Act of June 7, 1917, P. L. 447, asking this court to enter a decree for the specific performance of a certain written contract for the sale of real estate of said decedent. The petition was joined in by

124

the devisees and legatees named in the probated will of decedent, also by Emanuel S. Bair, party of the second part to the contract, and Bessie F. Bair, his wife, in whose joint names, as grantees and as tenants by the entireties, said Emanuel S. Bair, under the terms of the written contract, had requested that the deed be made. A citation was awarded on said petition which was served on Burtuis I. Hykes, Beulah C. Murphy, Daniel M. Emig, and Charlotte E. Baugher, the first two of whom are named as devisees of said tract of land in a former will of said decedent dated February 28, 1936, and all four of whom are heirs at law and next of kin of said decedent. Upon an alias citation, all the remaining heirs at law and next of kin of decedent were made parties to the proceeding. The petition has attached to it a copy of the probated will of decedent and a copy of the written contract for the sale of the real estate and in addition avers, inter alia, as follows: That William E. Emig, decedent, died November 28, 1938. His alleged last will and testament was probated December 9, 1938. The date of the written contract for the sale of real estate by decedent to Emanuel S. Bair is May 10, 1938. This agreement, after describing the real estate intended to be sold and conveyed by decedent, provided, so far as is pertinent to this proceeding, as follows:

"Said party of the second part may if he desires have the deed written to Emanuel S. Bair, and Bessie F. Bair, his wife, as tenants by the entireties. . . .

"In consideration whereof, the said party of the second part agrees to pay said party of the first part therefor, the sum of seventy-seven hundred and fifty ($7750) dollars in manner following, to wit: Fifteen hundred ($1500) dollars upon the execution of this agreement, receipt whereof is hereby acknowledged, and the balance or sum of sixty-two hundred and fifty ($6250) dollars on or before July 1, 1938, and upon the payment of the said sum, the said party of the first part will, at his own proper cost and charge, make, execute and deliver to the said party

or parties of the second part, a good and sufficient deed for the proper conveying and assuring of the said premises in fee simple, free from all encumbrances, and dower or right of dower; such conveyance to contain the usual covenants of general warranty.

"And it is further agreed by and between the said parties, that possession of said premises shall be delivered to the party of the second part, his heirs or assigns, this date, upon the payment of the said $1500 and the party of the second part shall have the right to till and cultivate the soil upon said premises and to otherwise occupy and use the same."

The petition further avers that the sum of $1,500 was paid by Emanuel S. Bair upon the execution of said written agreement and the payment of the balance or sum of $6,250 to be paid on or before July 1, 1938, was extended by the parties by reason of the fact that it was necessary for decedent to present his petition to the Orphans' Court of York County, Pa., for the purpose of discharging certain dower funds which were charges against said tract of land, which petitions were prepared and presented to said court and said dower funds were discharged by appropriate decrees of this court, but before the execution and delivery of a deed for said tract of land to the purchaser decedent died without having made any provisions for the performance of his said contract. An answer was filed only by the four respondents above named. No denial was made of any of the facts averred in the petition. The answer, however, does set forth objections to a decree of specific performance as follows:

"First: That respondents believe and expect to be able to prove that at the date of the execution of the probated will of decedent and at the date of the alleged agreement of sale of real estate, decedent did not have sufficient mental capacity to execute said will and agreement.

"Second: That the execution of said alleged will and agreement of sale was had by undue influence practiced upon decedent.

"Third: That the agreement of sale fell, even if valid, by reason of the fact that the time of performance thereof was fixed for July 1, 1938, when decedent was still living and that Emanuel S. Bair and Bessie F. Bair, his wife, by their failure to carry out said agreement of sale, lost their rights thereunder.

"Fourth: That the agreement of sale was in violation of an agreement respecting the custody of the estate of the decedent entered into in settlement of a pending proceeding for the purpose of having him adjudicated a weak-minded person, and that the same is in derogation of the rights of Beulah C. Murphy and Burtuis I. Hykes, two of the respondents, who are named as devisees of said real estate in decedent's former will dated February 28, 1936."

We observe with the utmost importance that the answer does not contain any allegations that Emanuel S. Bair, the second party to the contract, had any knowledge of the alleged mental incapacity of decedent when the agreement of sale was entered into on May 10, 1938, or that he personally practiced any undue influence or had any knowledge of its having been practiced upon decedent by any other person; that the consideration agreed to be paid for said real estate was not a fair and adequate consideration therefor; nor does it contain any allegations of misrepresentation, suppression of the truth, suggestion of the false, or fraud of any kind practiced upon decedent or that the transaction was inequitable and unjust in itself or rendered so by matters subsequently occurring, or that it would not be to the best interest of the estate of decedent to enter the decree as prayed for.

It is indispensable that the answer should aver and the evidence satisfactorily prove decedent's mental incapacity, or that undue influence was exerted upon him, both of which were known to the purchaser at the time of the execution of the contract, and that the integrity of the transaction was so affected thereby as to move the conscience of the court to find that fraud and imposition had been

practiced upon decedent in such manner as to make the contract so inequitable and so unjust that it should not be specifically enforced. The answer does not contain any of these elements and, under these circumstances, the court might have been warranted in entering a decree of specific performance on the petition and answer alone: Hollis v. Bland, 62 Pa. Superior Ct. 505; Levy's Estate, 273 Pa. 148; Pfeil's Estate, 287 Pa. 21; Rubins v. Hamnett et al., 294 Pa. 295. But recognizing the principle as laid down in Levy's Estate, supra, that "a decree for specific performance is not a matter of course but rests in the sound discretion of the chancellor"; or, as stated in Hollis v. Bland, supra, that " 'Equitable relief, . . . is not the absolute right of either party—it is of grace only, and rests in the discretion of the court to be exercised upon a consideration of all the circumstances of the case' "; and for the further reason that the answer contained a veiled threat of a possible appeal from the probate of the will, we decided to exercise our discretion in the matter after a full hearing was allowed to both sides of the controversy.

A very considerable amount of testimony was taken. Respondents properly assumed the burden of proof. The witnesses called on behalf of respondents were composed of 22 laymen, neighbors, or acquaintances of decedent for varying periods of years and one medical doctor as an expert, who had seen decedent on three or four occasions in a professional capacity, for the purpose of showing the mental incapacity of decedent to execute his probated will dated March 22, 1938, and the written contract for the sale of his real estate dated May 10, 1938, and that both were executed by him as the result of undue influence practiced upon him by Warren L. Leeking, who is named as executor in his said will. The agreement respecting the custody of the estate of decedent, entered into in the settlement of a proceeding in the court of common pleas for the purpose of having decedent adjudicated a weak-minded person, was also offered in evidence by re-

spondents for the purpose of showing that the written contract for the sale of his land was in derogation of the rights of Beulah C. Murphy and Burtuis I. Hykes, named as devisees of said real estate in decedent's former will dated February 28, 1936.

The witnesses called on behalf of petitioners were composed of 27 laymen, also neighbors or acquaintances of decedent over varying periods of years, and four medical doctors who were able to qualify as experts and also from personal contacts with decedent in a professional capacity, all of which testimony was introduced for the purpose of rebutting any inference of decedent's mental incapacity or undue influence practiced upon him which might have been drawn from respondents' testimony. We were liberal in our rulings, and on the authority of Rubins v. Hamnett et al., 294 Pa. 295, we allowed the inquiry to cover the last several years of his lifetime.

Numerous offers of testimony were made by both sides, to the admissibility of which objections were made. We allowed the testimony to be placed on the record and reserved our rulings until we made our final analysis of all the testimony. In the case of all such offers, we now overrule the objections, admit the testimony, and, in each instance, seal an exception on behalf of the objectors. We add, however, that as we view the law applicable to this proceeding, the admissibility of said testimony becomes unimportant except that by our rulings we complete the record in the event that a review of the proceedings should become advisable.

The liability of a person of unsound mind on his contracts is stated by the Supreme Court as follows: In La Rue v. Gilkyson, Exec., etc., 4 Pa. 375, Gibson, C. J., laid down the rule that an executor of a lunatic is liable for necessaries furnished to his testator, while non compos mentis, before a commission issued and after the issuing of the commission and before the appointment of a committee, and in so holding the chief justice further said:

"Why should not such a man be liable even for merchandise innocently furnished to his order in similar circumstances? To supply him with articles known to be improper for him, would bear on the face of the transaction evidence of an attempt to take advantage of his infirmity, and he would not be liable for the price of them. Nor would he be bound by a contract unexecuted by either party. In the case before us there is no difficulty on either of these heads."

This quoted statement of the chief justice seems, however, to be merely a dictum. In Beals v. See, 10 Pa. 56, 61, where the same question commented upon in the above-quoted dictum was actually in issue, the same chief justice restated the dictum as authoritative law and commented further by saying:

"Should he have made a wild and unthrifty purchase from a stranger unapprised of his infirmity, who is to bear the loss that must be incurred by one of the parties to it? Not the vendor, who did nothing that any other man would not have done. As an insane man is civilly liable for his torts, he is liable to bear the consequences of his infirmity, as he is liable to bear his misfortunes, on the principle that where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it. . . . Had there been fraud, or undue advantage taken—but the judge declares that it was not imputed at the trial, and we are bound by his report—the personal appearance and extravagant views of the intestate might have been left to the jury, as circumstances that ought to have put the defendants on their guard; but the prayers for direction seem to have been founded on a notion that, independent of every other consideration, a *non compos mentis* has not capacity either to make or to execute a contract, under any circumstances—a position altogether untenable."

In Lancaster County National Bank v. Moore, 78 Pa. 407, a suit was entered by the bank against Moore, a lunatic, as maker of a promissory note. The defense was that

defendant was non compos mentis. It appears that subsequent to the execution of the note, an inquest found Moore to be a lunatic for a time anterior to the discount of the note. It was held that, under the circumstances, the insanity of Moore was not a defense, the contract being executed and without fraud. Justice Paxson, speaking for the court, reviews the decision of Beals v. See, supra, with approval, although the justice does say that the decision does not apply to the conveyances of land or other instruments under seal. It is interesting to note, also, in this decision, that neighborhood reports of Moore's insanity were not legitimate evidence in the case, as this kind of evidence is mere hearsay and no amount of it could legally establish the fact of insanity. The court intimated that it might have been received if such reports were brought home to the bank. In Moore v. Hershey, 90 Pa. 196, in a suit by the endorser of a promissory note, the defense was that at the time said note was given Moore, the defendant, was a lunatic, or non compos mentis; that proceedings had been theretofore instituted for declaring him such; that he was shortly afterwards regularly found, by an inquest, to be a lunatic, without lucid intervals, and to have been so for about three years prior thereto, and that Moore had received no value whatever for the note and that the sole consideration for it was a worthless patent right, which plaintiff knew at the time he bought the note, and that Moore had received no value for it. Justice Paxson reviewed the cases hereinbefore referred to with approval and further held that, because Moore had received no consideration for the note, of which plaintiff had knowledge, the defense offered was a good, legal defense. The court further held that the pending proceeding to have Moore declared a lunatic when the note was given was, undoubtedly, constructive notice in questions of title and property to plaintiff. In Wirebach's Executor v. First National Bank of Easton, 97 Pa. 543, 549, in discussing the liability of a non compos mentis ac-

commodation endorser of a promissory note, who received no benefit therefrom, the court, per Trunkey, J., says:

"Where a person fairly and in good faith, sells property or loans money to a lunatic who appears to be sane and is not known by the vendor or lender to be insane, and who has not been found to be a lunatic by judicial proceedings, and the lunatic receives and uses the same, whereby the contract becomes so far executed that the parties cannot be placed *in statu quo*, such a contract cannot afterwards be set aside, or payment refused by the lunatic or his representatives".

The court reviewed and cited with approval the doctrines of the cases to which we have already referred. In Rubins v. Hamnett et al., 294 Pa. 295, where a bill in equity had been filed against the husband and wife for specific performance of a contract to sell real estate, it was proven that six weeks after the contract had been signed, the husband had been judicially decreed a mental incompetent. The court, per Frazer, J., although finding that the husband was not a mental incompetent when the contract was executed, nevertheless, said (p. 299):

"Dealings of sale and purchase by a person apparently sane, though subsequently found to be insane, will not be set aside against those who have dealt with him on the faith of his being a person of competent mental understanding". The court cited with approval Wirebach's Executor v. First National Bank of Easton, supra.

Applying the legal principles enunciated by the Supreme Court in the foregoing-cited cases, we conclude that in order to successfully oppose the prayer for specific performance, there must be satisfactorily proven one or more of the elements which we have already pointed out and which the answer fails to allege.

We have carefully examined all the testimony offered and can find none which proves or has any tendency to prove that Emanuel S. Bair had any knowledge or was put upon notice in any way of the alleged mental incapacity of decedent. No claim is made that said Emanuel S.

Bair practiced any undue influence upon decedent; and, if we assume that a confidential relationship existed between decedent and Warren L. Leeking (cases defining it are collected in McCown et al. v. Fraser et al., 327 Pa. 561, at 565 et seq.), the evidence is wholly devoid of even the suggestion that collusion existed between said Emanuel S. Bair and said Warren L. Leeking, or that the transaction was affected by any taint of undue influence, imposition, fraud, or deception.

No claim is made that the consideration of $7,750 to be paid for the land, as provided in the written contract of sale, was not its fair market value, and if such claim had been made, the testimony of Harvey R. Heilman, the auctioneer, who had conducted a public sale of said tract of land on December 18, 1937, when it was bid to the sum of $6,400, would be very persuasive with the court in finding that the contract price was a fair and adequate price for the same.

Respondents' objection that the purchaser failed to carry out his part of the agreement and, therefore, lost his rights thereunder, was abandoned, and we need not make any further comment thereon.

The principle that the personal representatives of a lunatic may, after his death, ratify or disaffirm a bargain, would not apply in this proceeding with much force, for the reason that the executor of the estate has been charged with having practiced undue influence upon decedent and he could hardly be permitted to ratify his own wrong if he had been guilty of the conduct charged against him.

Our construction of the principles of law, as laid down by the authorities which we cited, makes it unnecessary to determine the mental soundness of the decedent on May 10, 1938, when the agreement of sale was entered into, and, for a greater reason, it would not be proper for us to determine in this proceeding the validity of his probated will, as decedent's mental condition, at the time he executed said will, was evidence only of what his mental

condition was on May 10, 1938, and to pass upon the validity of his probated will in this proceeding would be in its very nature, a collateral attack thereon, which is not permissible under the law. The question of the validity of decedent's probated will cannot be determined by a collateral attack thereon. It has been admitted to probate and its validity has, therefore, been judicially decided, and it can be set aside only by appeal, being unimpeachable in any other proceeding: Hickman's Estate, 308 Pa. 230; Norris' Estate, 329 Pa. 483.

Under all the evidence in the case and the law applicable thereto, we conclude that the transaction by which decedent sold his real estate to Emanuel S. Bair was not inequitable or unjust in itself, or rendered so by matters subsequently occurring; that the same was made in good faith; that no imposition or deception was practiced upon decedent, and that both decedent's estate and the purchaser of said real estate are entitled to specific performance of the contract.

The tract of land in controversy had been specifically devised to Beulah C. Murphy and Burtuis I. Hykes, two of the respondents, under a former will of decedent, dated February 28, 1936, and it was urgently argued by their counsel that if the contract be specifically enforced, the rights of these two specific devisees attach to the proceeds of the sale, and the court has been requested to impound the same for the protection of the rights of said devisees until the question so raised may be fully determined in an appeal taken from the decision of the register of wills, admitting to probate the will of decedent, dated March 22, 1938. To accede to this request would interfere with the orderly progress of the settlement of this estate, which we do not deem necessary by reason of the fact that the executor has filed his bond in this court in the sum of $12,500 to secure the proper application of the proceeds of sale. A prompt appeal from the probate of the will would expedite the determination of this question.

Section 21(a) of the Register of Wills Act of June 7, 1917, P. L. 415, authorizes an appeal from the probate of a will to be taken to the orphans' court within a term of two years, provided "that any party entitled to appeal may be cited by such court to show cause why he should not appeal within six months from the date of such citation, and, on the failure of such party to show cause, said court may make an order limiting the time for such appeal by said party to said period of six months."

We think it entirely proper to suggest that if the provisions of this act of assembly would be invoked it might expedite the settlement of this estate.

We are of the opinion that the facts revealed by the testimony fully justified the thorough and careful investigation which was made of the circumstances surrounding this transaction and, therefore, we think it is entirely proper to direct that the costs of the proceeding be paid out of the funds realized from the sale of this real estate.

And now, to wit, August 22, 1939, upon consideration of the facts averred in the petition, answer, and testimony, specific performance of the contract of sale, set forth in the petition, is decreed, and Emanuel S. Bair, party of the second part to said contract, is directed to pay unto Warren L. Leeking, executor of the estate of said William H. Emig, deceased, the balance of the purchase money, to wit, $6,250, in accordance with the terms of said contract, and the said Warren L. Leeking, executor as aforesaid, is directed to execute and deliver to said Emanuel S. Bair and Bessie F. Bair, his wife, as desired by said Emanuel S. Bair, a deed of conveyance in fee simple as tenants by the entireties for the premises described as follows:

All the following tract of land, situate, lying and being in the Township of Jackson, County of York, and State of Pennsylvania, bounded and described as follows, to wit: . . . containing 107 acres and 67 perches, more or less; it being the same property which in the partition proceedings in the Orphans' Court of York County, Pa., in the

estate of Michael Emig, deceased, was set aside to William E. Emig, minor, under the guardianship of Martin Smyser, and was known as purpart no. 3 in said proceedings; said proceedings being recorded in Record Book 3-D, p. 5, Orphans' Court Docket; said deed to have the same force and effect to pass and invest the estate intended as if the same had been executed by decedent in his liftime, approved security having already been entered by said executor in the sum of $12,500.

The costs of this proceeding to be paid by the estate of decedent out of the moneys received from the sale of said real estate.

An exception is granted to respondents to the action of the court in this regard.